IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARC Y., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 CV 7601 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Marc Y.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 24, 28] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 24] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 28] is granted.

## PROCEDURAL HISTORY

On February 21, 2018, Claimant protectively filed a Title II application for DIB alleging disability beginning on November 22, 2017. (R. 234–42). His claim was denied initially and upon reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 83–130, 133–34). On December 20, 2019, Claimant appeared and testified at a hearing before ALJ Edward P. Studzinski. (R. 58–77). ALJ Studzinski also heard testimony on that date from independent medical expert ("ME") Dr. Steven S. Goldstein and impartial vocational expert ("VE") Aimee Mowery (R. 44–58, 77–82). On February 6, 2020, ALJ Studzinski denied Claimant's claim for DIB. (R. 12–26).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since November 22, 2017, his alleged onset date. (R. 14). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). *Id.* Specifically, Claimant has a spinal disorder and suffers from obesity. *Id.* The ALJ then acknowledged two non-severe impairments that did not result in any functional limitations lasting at least twelve continuous months: diabetes and a thyroid disorder. (R. 14–15). The ALJ also noted three non-medically determinable impairments of depression, anxiety, and posttraumatic stress disorder and evaluated

2

the "paragraph B" criteria, assessing mild limitations in all four broad areas of mental functioning. (R. 15–17).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). In particular, the ALJ identified listings 1.02 and 1.04. (R. 17). Regarding listing 1.02 for major dysfunction of a joint, the ALJ compared the listing criteria with the medical evidence and determined the listing was not satisfied because the evidence did not support a finding that Claimant could not ambulate effectively, or that he was unable to perform fine and gross movements effectively with his hands. *Id.* The ALJ similarly concluded Claimant did not meet or equal listing 1.04 for spinal disorders because he did not exhibit sensory loss or motor loss, spinal arachnoiditis, or the inability to ambulate effectively as defined by the listing criteria. *Id.*

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

> "lift and/or carry up to 10 pounds occasionally and lighter weights frequently, and has no limitations in his ability to sit throughout an eight-hour workday. The claimant can stand and/or walk for 10 continuous minutes, and for a total of two out of eight hours. He is able to ambulate effectively, but he should not be required to perform more than minimal standing or walking on rough or uneven surfaces. He should be allowed to use a cane at all times while walking, and when standing for longer than five minutes. He should be allowed to alternate his position such that he stands and/or walks for one to two minutes out of every half hour. He would not need to be off task while doing so. The claimant can occasionally climb ramps and stairs, and he can occasionally stoop, kneel, crouch and crawl, but he can never balance or climb ladders, ropes or scaffolds. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and he should avoid concentrated exposure to unguarded hazardous machinery. Due to his perception of his symptoms and limitations, the claimant is further limited to simple, routine tasks. He is further precluded

from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public which is incidental to his primary job duties. He is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks." (R. 17–18).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as an escrow clerk. (R. 25). Crediting the VE's testimony, the ALJ concluded that the demands of Claimant's past work exceeded his residual functional capacity and so Claimant would not be able to perform that past relevant work as actually or generally performed. *Id.* The ALJ then concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, he is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 25–26). Specifically, the VE's testimony, on which the ALJ relied, identified jobs at the sedentary exertional level including ticket counter, final assembler, and bench worker. *Id.* The ALJ then found Claimant was not under a disability from November 22, 2017 through February 6, 2020, the date of his decision. (R. 26). The Appeals Council declined to review the matter on October 15, 2020, (R. 1–4), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial

4

gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi,* 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

However, even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

### I. Claimant's RFC

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing

basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

Claimant argues that the RFC is flawed in this case because it does not adequately account for his mild limitation in concentration, persistence, or pace, nor his obesity. But the ALJ did accommodate Claimant's mental limitations and postural difficulties in the RFC, though he admittedly did not assign to them the significance that Claimant would prefer when he did not find them to be work-preclusive. As explained below, the ALJ supported his RFC conclusion with substantial evidence and built a logical bridge between the evidence and his conclusion that Claimant's mental limitations and obesity were not work-preclusive and could be accommodated by the restrictions contained in the RFC. Claimant's arguments to the contrary, which do little more than restate his subjective symptom report, does not persuade the Court that remand is required. Claimant may disagree with the ALJ's conclusion, but the "RFC is a legal—and not a medical—decision that is exclusively within the ALJ's authority to make[.]" *Michael B. v. Berryhill*, 2019 WL

7

2269962, at *6 (N.D. Ill. 2019). The ALJ did not err in his RFC decision here, as discussed further below.

### A. Mild Limitations in Concentration, Persistence, or Pace

At step two, the ALJ acknowledged that Claimant was sporadically treated for depression and anxiety and evaluated the "paragraph B" criteria to determine the nature and extent of Claimant's functional limitations. Relying on objective observations at Claimant's psychiatric consultative examination, (R. 892–97), medical treatment notes that reflected intact memory, attention, and concentration, (R. 1278–80, 1283), and Claimant's activities of daily living (R. 15–16), the ALJ concluded Claimant had only a mild limitation in concentration, persistence, and pace. Claimant now asserts this conclusion was "problematic," but cites no evidence supporting greater limitations in this area. [ECF No. 24] at 8–9. Nor does the Court independently see any evidence suggesting the ALJ erred in his conclusion that Claimant was mildly limited in his ability to concentrate, persist, or maintain pace. The ALJ properly considered the objective medical evidence, opinions of the state agency consultants and Claimant's treating physicians (discussed *infra*), Claimant's subjective symptom statements, and activities of daily living in making the supportable conclusion that only a mild limitation existed.

After concluding Claimant had a mild limitation in concentration, persistence, or pace, the ALJ went on to incorporate that limitation in the RFC by limiting Claimant to simple, routine tasks, no work involving direct public service, either in person or over the phone, no more than brief and superficial interaction with the public that is incidental to primary job duties, no work in crowded or hectic

8

environments, no more than brief and superficial interactions with supervisors and co-workers, and no tandem tasks. (R. 17–18). Contrary to Claimant's vague assertion that the "evidence supports far greater limitations than proposed by the ALJ" – namely, "off-task time and absenteeism" – the longitudinal record evidence does not support more extreme limitations. The ALJ considered the only two opinions in the record to endorse such limitations (discussed *infra*) and permissibly discounted those opinions as inconsistent and unsupported by the record. Left only with Claimant's disagreement with how the ALJ weighed the evidence, which is insufficient to show reversible error, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), the Court sees no basis for remand here. The ALJ's analysis of Claimant's mental limitations "[said] enough to enable review of whether the ALJ considered the totality of a claimant's limitations," including his ability to concentrate, persist, or maintain pace. *Lothridge v. Saul,* 984 F.3d 1227, 1233 (7th Cir. 2021). Even if reasonable minds could differ as to the effect of Claimant's mental limitations on his ability to work full time, the Court must defer to the ALJ's judgment and weighing of the evidence under these circumstances. *Zoch v. Saul,* 981 F.3d 597, 602 (7th Cir. 2020).

A final note regarding the ALJ's discussion of the four broad areas of mental functioning. Claimant repeatedly criticizes the ALJ's decision to substantively evaluate the "paragraph B" criteria at step two and incorporate that analysis by reference into the later sections of his opinion. [ECF No. 24] at 7, 8, 12. But the Court "reads the ALJ's decision as a whole," and the ALJ "need not repeat analyses that are relevant to multiple parts of [her] decision." *Dorothy B. v. Berryhill*, 2019 WL 2325998, at *4 (N.D. Ill. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th

9

Cir. 2004)). The ALJ discussed Claimant's mental impairments and engaged in a fulsome evaluation of their severity and support in the medical record at step two. The Court sees no reason the ALJ should be requied to regurgitate that fulsome discussion at a later stage of the opinion. *See, e.g., Patricia T. v. Saul*, 2020 WL 2767580, at *6 (N.D. Ill. 2020) (citing *Rice* and relying on ALJ's "in-depth explanation" of limitations in "concentration" at step two as support for the ALJ's later RFC discussion).

### B. Obesity

Claimant next charges that the ALJ ignored his obesity and the combined effect it would have on his other impairments. The regulations explain, and the ALJ acknowledged, that the "combined effects of obesity with other impairments may be greater than what might be expected without obesity." SSR 02-01p, 2002 WL 34686281, at *6 (Sept. 12, 2002); (R. 22). Notwithstanding that "obesity is no longer a standalone disabling impairment ... the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill,* 888 F.3d 323, 328 (7th Cir. 2018).

Here, the ALJ properly considered Claimant's obesity and its combined effects with other impairments. Contrary to Claimant's characterizations, the ALJ was well aware of Claimant's obesity, noting Claimant's BMI twice, (R. 17, 22), and describing his obesity as a severe impairment. (R. 14). He then described in detail why Claimant's obesity, "both individually and in combination," did not meet the severity of a listing at step three:

10

> "The record also shows the claimant is obese. In April 2018, he was 5'10" tall, and weighed 302 pounds, resulting in a body mass index ("BMI") of 43.3. Ex. 13F. I evaluated the claimant's obesity under SSR 19-2p. Obesity does not meet or medically equal any listing because the evidence does not show obesity causes limitations consistent with other listed impairments. Obesity does not result in an inability to ambulate effectively under section 1.00, affect the claimant's pulmonary capacity under section 3.00, or cause reduced function in the claimant's cardiovascular system under section 4.00. Although the claimant is obese, this condition does not result in an impairment of listing-level severity." (R. 17).

The ALJ then went on to explain how he accommodated the effect of Claimant's obesity on his physical functioning, noting that because "obesity is likely to exacerbate his spinal condition," Claimant's "obesity, when considered in combination with those spinal impairments, limits the claimant to a reduced range of sedentary exertion, as set forth above." (R. 22).

The ALJ's assessment that obesity was a severe impairment, his analysis of the effect of that impairment on Claimant's physical functioning, and the incorporation of an obesity-related limitations into the RFC is enough for this Court to conclude the ALJ adequately considered Plaintiff's obesity and supported his RFC determination with substantial evidence. *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015). That the ALJ predicated his decision, at least in part, on the opinions of the state agency doctors and ME Dr. Goldstein – all of whom considered Claimant's obesity and recommended certain physical and postural activities in the RFC – also persuades the Court that the ALJ did enough to account for Claimant's obesity in this case. (R. 22, 46); *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Pepper v. Colvin,* 712 F.3d 351, 364 (7th Cir. 2013).

11

## II.   Subjective Symptom Testimony

The ALJ discounted Claimant's subjective symptom testimony in this case because it was inconsistent with the medical evidence, the opinions of the state agency consultants and Dr. Goldstein, and his self-reported activities of daily living. (R. 18–22). Claimant disagrees with the ALJ's decision to do so, asserting that the ALJ rejected his claims simply because he believed Claimant is "untruthful." [ECF No. 24] at 9. Claimant also quarrels with the ALJ's use of the qualifying phrase "[d]ue to his perception of his symptoms and limitations" in the RFC, arguing this phrase demonstrates a broader problem wherein the ALJ "implied a bit of melodrama" and charged Claimant with "embellishment and exaggeration" in his opinion. [ECF No. 24] at 8–9. In this Court's view, however, the ALJ gave "specific reasons supported by the record" for discounting Claimant's subjective symptom statements and was not patently wrong in doing so. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). For that reason and as described further below, the Court declines to disturb the ALJ's credibility determination.

As noted above, an ALJ's evaluation of a claimant's subjective symptom statements is afforded "special deference" and will be upheld unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also, Burmester*, 920 F.3d at 510; *Murphy,* 759 F.3d at 816 (patently wrong "means that the decision lacks any explanation or support."). SR 16-3p[3] outlines a two-step process for an ALJ

---

[3] Because the ALJ issued his ruling after March 28, 2016, SSR 16-3p, which superseded SSR 96-7p, applies here. See SSR 16-3p. But SSR 96-7p and SSR 16-3p "are not patently inconsistent with one another" – instead, a "comparison of the two Rulings shows substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *Shered v. Berryhill*, 2018

to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. SSR 16-3p, 2017 WL 4790249, *49463; *Wilder*, 22 F.4th at 654. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2017 WL 4790249, *49464; *Wilder*, 22 F.4th at 654. "The ALJ must justify his or her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017).

Here, the ALJ concluded Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but disagreed that the intensity, persistence and limiting effects of those symptoms were consistent with the medical evidence and other evidence in the record. (R. 18). In support of that conclusion, the ALJ first turned to the objective medical evidence. He contrasted Claimant's statements that he had difficulty using his arms and legs with treatment notes that consistently documented near full or full strength in all of Claimant's

---

WL 1993393, at *5 (N.D. Ill. 2018). SSR 16-3p simply reaffirmed the focus on the regulatory language regarding symptom evaluation and clarified that the "subjective symptom evaluation is not an examination of the individual's character." *Id*. at 49463; *see also Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016). The case law discussing both SSR 16-3p and SSR 96-7p is therefore informative on this point.

13

extremities, as well as a lack of numbness or difficulty using his hands. (R. 19–21, 710, 765, 901–02, 1202–03, 1387, 1392, 1395–97). The ALJ similarly contrasted the mental limitations Claimant described in his testimony – particularly the concentration, persistence, or pace issues discussed *supra* – with treatment notes or examination findings documenting normal attention span and an intact memory. (R. 15, 883, 885, 894–95, 1278–81, 1283, 1297, 1298). Notwithstanding Claimant's testimony that he suffered from disabling pain, the objective medical evidence told a different story, and the ALJ properly considered the extent to which the objective medical evidence supported the degree of severity of Claimant's subjective complaints; the duration, frequency, and intensity of the pain; medications taken; and treatment. *Scheck*, 357 F.3d at 703 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

The ALJ also relied on evidence that Claimant's activities of daily living suggested he was not as disabled during the relevant time period as he portrayed himself to be. There are "limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," *Prill v. Kijakazi,* 23 F.4th 738 (7th Cir. 2022), and the Seventh Circuit has "cautioned ALJs not to equate such activities with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Id.* (quoting *Loveless*, 810 F.3d at 508). Here, the ALJ was not wrong to consider Claimant's testimony at the hearing that, despite his claimed limitations related to standing, sitting, walking,

14

and concentrating, Claimant was able to go out alone and drive a car ("indicating an ability to understand, remember, and apply how to operate a motor vehicle, follow the rules of the road, and navigate to a location"), handle a bank account and pay bills, socialize with friends who stop at his home to see him, and go to Freemason meetings twice per month. (R. 15) (citing R. 328–35); *Prill*, 23 F.4th 738.

In sum, Claimant offers only vague assertions of disabling pain that are insufficient to overturn the ALJ's credibility determination on the standard of review the Court is bound to apply here. Unlike this Court, the ALJ "had the opportunity to observe the claimant testifying, and, as Justice Jackson rightly observed more than a half-century ago, 'a few minutes observation…in the courtroom is more informing than reams of cold record.'" *Brenda L. v. Saul,* 392 F. Supp. 3d 858, 864 (N.D. Ill. 2019) (quoting *Ashcraft v. State of Tenn.,* 322 U.S. 143, 171 (1944) (Jackson, J., dissenting)). All that is required of the ALJ is that he explain his subjective symptom evaluation "in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here, particularly given credibility determinations are due special deference as factual findings. *Scheck*, 357 F.3d at 703.

### III.  Treating Physician Opinions

Claimant filed his claim after March 27, 2017, meaning under the revised regulations, the ALJ no longer gives "specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the most important factors

15

in evaluating any doctor's opinion are supportability and consistency. *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022); 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). Other factors to be considered in the ALJ's evaluation include the relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), (c). But the ALJ's decision must only explain how she considered the factors of supportability and consistency – she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Two of Claimant's treating physician's – Dr. Yuriy Bukhalo, a pain management physician, and Dr. Avi Bernstein, an orthopedic surgeon – provided opinions supporting Claimant's disability application in this case. Dr. Bukhalo opined that Claimant could never lift five pounds, could use his hands less than a third of the workday, and had to lie down more than three hours per day. (R. 22, 1050–1055, 1380–83). Consistent with the revised regulations, the ALJ evaluated the supportability and consistency of Dr. Bukhalo's three opinions and concluded they were neither consistent with nor supported by the objective medical findings, the longitudinal medical evidence, including Claimant's relatively conservative course of treatment and predominantly normal examination findings related to the use of his hands, or the opinions of the independent ME and state agency consultants. (R. 22–23). The Court finds no error in this assessment.

16

The ALJ acknowledged that Dr. Bukhalo "specialized in pain management and treated the claimant throughout the period at issue," but correctly noted that Dr. Bukhalo's independent observations and treatment notes contrasted with the more severe limitations he noted in his functional capacity assessments. (R. 22–23). For example, Dr. Bukhalo opined that Claimant needed a wheelchair, (R. 1054), a finding entirely belied by the medical evidence and other opinion testimony that Claimant could ambulate with a cane and an antalgic gate. (R. 20–21, 1231, 1241, 1297, 1392). Large portions of Dr. Bukhalo's opinions also appear to be based entirely on Claimant's subjective pain reports, which gave the ALJ, and now this Court, some pause about their supportability. "Medical opinions upon which an ALJ should rely need to be based on objective observations, not a recitation of a claimant's subjective complaints." *Osborn v. Astrue*, 2010 WL 2772480, at *9 (N.D. Ill. 2010) (citing *Rice*, 384 F.3d at 371).

Similarly, the ALJ evaluated Dr. Bernstein's functional capacity assessment, (R. 1285–1288), and his note that Claimant is "totally and permanently disabled." (R. 23). Again consistent with the revised regulations, the ALJ credited, but did not give outsized importance to, the fact that "Dr. Bernstein [was] an orthopedic specialist who treated the claimant during the period at issue." (R. 22). Instead, the ALJ focused on the consistency and supportability of those opinions, especially compared with Dr. Bernstein's own treatment notes. (R. 23). Claimant fails to explain how Dr. Bernstein's own medical records, which do not document significant functional limitations, or the longitudinal medical evidence supports the extreme limitations endorsed in his assessment, nor can the Court independently ascertain that support

17

in the record. *Pavlicek v. Saul,* 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes."); *Fair v. Saul,* 853 F. App'x. 17, 21 (7th Cir. 2021) (the ALJ properly discounted treating physician's opinion where his "own records did not support his conclusions.").

"Substantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. 1148). Viewing the record as a whole, the ALJ adequately considered all of the opinion evidence of record – those of the state agency consultants, independent ME Dr. Goldstein, Dr. Bukhalo, and Dr. Bernstein – and supported his conclusion that the more restrictive limitations endorsed by Dr. Bukhalo and Dr. Bernstein were not persuasive or supported by the record evidence.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 24] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 28] is granted.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 31, 2023